UNITED STATES of America, Plaintiff–Appellee,

v.

Noah Ryan ROBINSON, Defendant–Appellant.

No. 91–1736.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1993.

Decided Oct. 14, 1993.

---

Diane Saltoun (argued), Barry R. Elden, Ross O. Silverman, Asst. U.S. Attys., Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Allan A. Ackerman (argued) and Cynthia Giacchetti, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Noah Robinson was convicted of RICO conspiracy as well as tax and bankruptcy fraud, and we have affirmed those convictions.[1] He appeals the imposition of criminal forfeiture which was entered as the result of a proceeding which followed those convictions. The forfeiture order requires him to pay the government $600,500 pursuant to 18 U.S.C. § 1963(a). Robinson claims that the forfeiture order must be vacated because the record does not demonstrate that he waived his right to a jury trial with regard to forfeiture issues. According to Robinson, neither his counsel nor the district judge advised him that he had a right to a jury trial on issues involving forfeiture. However, only if Robinson is entitled to have a jury make a determination regarding forfeiture does the question of waiver come into play. Thus we first address whether such a right exists.

■ In their briefs, both the government and Robinson proceed with the assumption that Robinson has a constitutional right to a jury trial on certain forfeiture issues—an assumption we are not convinced is correct. RICO forfeiture is an *in personam* criminal forfeiture and a form of monetary punishment. *Alexander v. United States,* —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). *See also United States v. Horak,* 833 F.2d 1235, 1243 (7th Cir.1987); *United States v. Ginsburg,* 773 F.2d 798, 800–01 (7th Cir.

1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). "The Sixth Amendment never has been thought to guarantee a right to a jury determination" on the appropriate punishment for the offender. *Spaziano v. Florida,* 468 U.S. 447, 459, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984) (holding that the defendant's Sixth Amendment right to a jury did not include having a jury decide whether or not he should receive a capital sentence). This analysis suggests, and we believe, that a defendant does not have a constitutional right to have a jury determine any issues concerning forfeiture. *But see United States v. Garrett,* 727 F.2d 1003, 1012 (11th Cir.1984) (defendant has Sixth Amendment right to jury trial on issue of whether an asset may be forfeited under 21 U.S.C. § 848).

■ However, we need not provide a definitive answer to this question today, because, as Robinson points out, he has a legislatively created right to have a jury determine which assets he owns and which of those were used to promote a pattern of racketeering. Federal Rule of Criminal Procedure 31(e) provides:

**Criminal Forfeiture.** If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a *special verdict shall be returned* as to the extent of the interest or property subject to forfeiture, if any (emphasis added).

A special verdict "is a statement by the *jury* of the facts it has found...." BLACK'S LAW DICTIONARY 1399 (5th ed. 1979) (emphasis added). Thus, the language of the legislatively approved criminal rule provides the basis for a right to a jury determination on which of the defendant's assets are subject to forfeiture.

The Advisory Notes accompanying Rule 31(e) inform us that Congress added this provision in 1972 to provide procedural implementation of the forfeiture provisions of the Organized Crime Control Act of 1970 and the Comprehensive Drug Abuse Prevention and Control Act of 1970. FED.R.CRIM.P.

---

1. This appeal was originally consolidated with Noah Robinson's appeal of his criminal conviction. We have severed this appeal for separate review. For factual background see *United States v. Robinson,* 8 F.3d 398 (7th Cir.1993).

31(e) advisory committee's notes. The legislative history suggests that Congress intended to reestablish a type of common law criminal forfeiture which entitled the defendant to a special jury finding on which assets may be forfeited. FED.R.CRIM.P. 7 advisory committee's notes.

Given the plain language of the rule and the consistent legislative history, we hold that Robinson has a statutory right to have a jury determine which of his assets are subject to criminal forfeiture. As a result, we must determine whether Robinson validly waived his legislatively created right. To make this determination, however, we must first establish which standards govern our inquiry. Arguably, because we are focusing on a statutory right, not a constitutional one, we need not examine or apply our jurisprudence regarding waiver of constitutional rights. However, for the reasons that follow, we believe that constitutional waiver principles provide valuable guidance and will use them to analyze the question of whether Robinson waived his statutory right to a jury trial regarding forfeiture issues.

■ To decide the appropriate analytical framework for examining the validity of Robinson's waiver, we have examined case law regarding the waiver of constitutional rights and the waiver of statutory rights. Generally, a waiver of a constitutional right must be knowing and voluntary. *See, e.g., Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938) (defendant must know of his Sixth Amendment right to counsel in order to validly waive it). *See also United States v. Wade,* 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967) (waiver of right to counsel's presence during a lineup must be knowing and voluntary); *Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966) (waiver of Fifth Amendment rights must be knowing and voluntary). *But see Schneckloth v. Bustamonte,* 412 U.S. 218, 249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973) (a defendant who consents to a search while not in custody validly waives his constitutional rights even if he did not know he had a right to withhold his consent).

In contrast, a waiver of a statutory right may be valid even if it is not knowingly made. *See United States v. Busche,* 915 F.2d 1150, 1151 (7th Cir.1990) (defendant waives statutory right to have ten days to inspect his presentence investigation report before his sentencing if he participates in sentencing earlier without an objection). *Accord United States v. Edwards,* 945 F.2d 1387, 1404 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992); *United States v. Blythe,* 944 F.2d 356, 360 (7th Cir.1991). *See also Webb v. Keohane,* 804 F.2d 413, 414–15 (7th Cir.1986) (prisoner's waiver of rights, contained in the Interstate Agreement on Detainers Act, § 2, Art. IV(e), 18 U.S.C.App., need not be knowing and intelligent).

However, some courts have concluded that certain rights are so important that, even though they are statutorily created, they still can only be waived voluntarily and knowingly. A prime example of such a right is a defendant's statutory right to appeal his sentence. Every court that has addressed the issue has concluded that to be valid, the waiver of the right to appeal must be knowing and voluntary. *See United States v. Bushert,* 997 F.2d 1343, 1351 (11th Cir.1993); *United States v. Melancon,* 972 F.2d 566, 568 (5th Cir.1992); *United States v. Rivera,* 971 F.2d 876, 896 (2d Cir.1992); *United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992); *United States v. Narvarro–Botello,* 912 F.2d 318, 321 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir.1990).

■ It seems to us that the right to a jury trial on issues involving forfeiture is more important than the rights described above for which a knowing waiver is not required. Moreover, Robinson's jury right is at least as important as his right to appeal his sentence. We are not convinced that the fact that the right in this case is statutorily rather than constitutionally created diminishes its importance. Therefore, we hold that a defendant's waiver of his statutory right to have a jury determine which portion of his property is subject to forfeiture is only valid if knowingly and voluntarily made. Because this standard

is essentially the same as the standard for evaluating waivers of constitutional rights, we look to that body of law to determine whether Robinson's waiver is valid.

 In the constitutional framework, several established precepts guide our inquiry. Robinson has the burden of proving that he did not exercise a valid waiver of his right to a jury trial. *United States ex rel. Wandick v. Chrans,* 869 F.2d 1084, 1087 (7th Cir.1989); *United States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1178 (7th Cir. 1983), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). "[W]e can never presume waiver from a silent record." *Chrans,* 869 F.2d at 1087. However, the district court's finding that a valid waiver was executed is a question of fact reviewed only for clear error. *United States v. Rosa,* 946 F.2d 505, 507 (7th Cir.1991). Finally, whether a valid waiver exists depends on the unique facts of each case. *Chrans,* 869 F.2d at 1087.

Robinson argues that the record we have before us of the trial proceedings is silent on the issue of whether he executed a valid waiver. To a large extent, Robinson's assertion is correct. The record contains no signed waiver form. Nor does it contain any colloquy between the district judge and Robinson regarding Robinson's waiver of a jury trial on the issue of which assets are subject to forfeiture. Relying on *United States v. Garrett,* 727 F.2d 1003, 1013 (11th Cir.1984), *aff'd on other grounds,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), *United States v. Scott,* 583 F.2d 362, 364 (7th Cir. 1978), and *United States v. Delgado,* 635 F.2d 889, 890 (7th Cir.1980), Robinson argues that the absence of both of these items requires outright reversal at this point. We disagree.

 The execution of a written waiver of trial by jury is not required. In *Chrans,* we held that the absence of a signed waiver form does not make a waiver invalid *per se.* 869

F.2d at 1088. We decline Robinson's invitation to overrule *Chrans* and adopt the Eleventh Circuit's position that a waiver must be in writing to be valid, except in extraordinary circumstances. *Garrett,* 727 F.2d at 1013. Instead we reaffirm the principle that while the absence of a written waiver form is probative of whether or not the waiver is valid, it is not dispositive. Thus, the fact that Robinson did not execute a written waiver is merely one of the facts we consider in our evaluation.

Robinson's reliance on *Scott* and *Delgado* is also misplaced. Those cases held that if the district court failed to interrogate the defendant on the record, ensuring that he understood the right he was waiving, we would automatically reverse. *Delgado,* 635 F.2d at 890; *Scott,* 583 F.2d at 364. However, we modified this rule, pursuant to Supreme Court authority, in *United States v. Rodriguez,* 888 F.2d 519, 528 (7th Cir.1989). The rule of *Scott* and *Delgado* was adopted pursuant to this court's supervisory power. Following these cases, the Supreme Court held that automatic reversal because the district courts failed to follow a supervisory rule was not permitted. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Thus, in *Rodriguez,* we held that failure to follow *Scott* and *Delgado* did not result in automatic reversal, but rather reversal resulted only if the error was not harmless under Federal Rule of Criminal Procedure 52(a). 888 F.2d at 528.[2]

In summary, neither *Garrett, Scott,* nor *Delgado* mandate reversal in this case. However, we cannot say that the district court's failure to follow *Scott* was harmless because there is nothing else in the record before us which satisfactorily demonstrates that Robinson personally gave a knowing and voluntary waiver of his right to have a jury decide which assets are subject to forfeiture. *Cf. Rodriguez,* 888 F.2d at 519 (no doubt that defendant knew he had right to a jury despite the absence of formal colloquy because

---

**2.** We note that this conclusion is consistent with the cases that analyze a defendant's waiver of his statutory right to appeal. Most courts which have addressed the issue have held that while a Rule 11 colloquy on the record is helpful, reversal is not required, in the absence of such a

discussion, if it is otherwise clear from the record that the defendant knew he was waiving his right to appeal. *See Bushert,* 997 F.2d at 1354; *United States v. DeSantiago–Martinez,* 980 F.2d 582, 583 (9th Cir.1992); *United State v. Marin,* 961 F.2d 493, 496 (4th Cir.1992).

he referred to it and waived it in open court while the venire was present); *United States v. DeMichael,* 692 F.2d 1059, 1061 (7th Cir. 1982) (defendant, upon advice of counsel, signed stipulation of facts for judge to use in determining his guilt, watched the jury be dismissed and sat silent; valid waiver despite absence of written consent form required by Federal Rule of Criminal Procedure 23(a)); *United States v. Page,* 661 F.2d 1080, 1082–83 (5th Cir.1981) (despite the absence of a written waiver, valid waiver found where defendant listened to his counsel waive his right to a jury trial in open court and did not object).

■ The government takes the position that the record is not silent, pointing to various factors which it claims demonstrate that Robinson knowingly waived his right to a jury. First, the government contends that Robinson's agreement to waive a jury trial regarding forfeiture issues was established by Robinson's counsel during a conference held in the judge's chambers.[3] The record reflects that the following dialogue occurred during that meeting, apparently in the absence of Robinson:

THE COURT: Let the record indicate that the Court and counsel for the government [Mr. Stone] and counsel for Noah Robinson [Mr. Simone] are in chambers for the purpose of discussing an agreed-upon procedure as to the forfeiture aspects of this case. It is my understanding that you have discussed this matter, Mr. Stone.

MR. STONE: Yes, your Honor. Mr. Simone and the government have discussed the matter, and what we have agreed to do is to submit to the Court for your consideration the issue of RICO forfeiture. And the procedure we have agreed upon is that you will decide that as part of the entire sentencing package for Mr. Noah Robinson. The government and Mr. Simone will submit additional legal briefs and whatever additional evidence is necessary on this point.

MR. SIMONE: That's my understanding, as well.

While no mention was made of Robinson waiving a jury determination of relevant forfeiture questions, the foregoing colloquy implies that Robinson agreed to have the judge resolve all the issues connected with forfeiture. However, this colloquy does not provide sufficient indicia of a knowing and voluntary waiver. We would be in a position to find waiver if Robinson's attorney had told the district judge that he had discussed the matter of a right to a jury with his client, who decided to have the judge decide all issues, but we have no indication in the record that Robinson was consulted and made the decision. At best, we have an agreement made by opposing counsel and approved by the judge. "The right to a jury trial is personal to a defendant and one which he alone may waive." *DeRobertis,* 715 F.2d at 1182.

■ Second, the government directs us to language contained in a brief written by an attorney Robinson hired to assist during the forfeiture proceedings. A document entitled "Supplemental Memorandum of Defendant Regarding Forfeiture Issues," filed by defense counsel, contains two statements which the government believes support its conclusion that Robinson knowingly waived his right to a jury trial: (1) "[T]his is a bench trial on the criminal forfeiture allegations in the indictment"; and (2) "The Court should note that if the defendant had chosen a jury trial, a special verdict detailing the extent of the forfeiture would have been returned by the jury. *See* Fed.R.Crim.Proc. 31(e)." These statements were both made in the context of the defendant's argument that the government had to prove the amount of forfeiture beyond a reasonable doubt.

Neither of these statements is sufficient to demonstrate that Robinson knew of his right to a jury and waived it. The "bench trial" statement is nothing more than an acknowledgment of the type of proceeding. It is not probative on the issue of whether Robinson knowingly waived his right to a jury. The statement "if the defendant had chosen a jury trial" unequivocally shows that defense

---

**3.** This conference occurred after the jury had announced its verdict with regard to Robinson, but while it continued to deliberate the fate of other defendants.

counsel knew that Robinson had a right to a jury trial. Unfortunately, however, it tells us nothing about whether Robinson was informed of that right. There is no evidence that he read every brief submitted by his counsel. These statements are not enough to demonstrate a knowing waiver.

■ Third, the government points to a colloquy between the district court and opposing counsel. Robinson was present during this conversation because it took place during his sentencing.

> THE COURT: First of all, I would like to address the matter of forfeiture which appl[ies] to Mr. Noah Robinson, if I am correct?

> MR. STONE: That's correct, Judge.

> THE COURT: You wanted to speak to that matter?

> MR. STONE: Yes, Judge. Based on a meeting we had in chambers with Mr. Robinson's counsel, Miss Giacchetti, yesterday and the conversation we had this morning with Mr. Simone, it is the agreement of all parties that you are going, in effect, [to] bifurcate the judgment. You will handle the judgment many [sic] on the forfeiture issue separately, and its our understanding that you will issue a written order or opinion at some time in the future.

> THE COURT: All the parties have made all of the submissions they wish to submit, and they have indicated to me that there is no evidentiary matter that you wish to be heard.

> MR. STONE: The matter is fully briefed. No one wants to have oral arguments any further. You've heard all the evidence at trial. The matter has been submitted to you, and no one has any objection to the proceeding with the sentencing today and that you can handle the forfeiture on your own calendar at some point in the future. And I believe Mr. Simone and Miss Giacchetti have no objection to that.

> THE COURT: Mr. Simone?

> MR. SIMONE: That's correct, your Honor. I spoke to Miss Giacchetti last evening, and Mr. Robinson, and we have no objection to this matter being disposed of in the future.

The government would have us interpret the foregoing to be a knowing and voluntary waiver by Robinson. We cannot. This discussion, at best, demonstrates that Robinson agreed to have the district judge delay his decision on the forfeiture. It cannot be fairly read to say that Robinson agreed to have the judge hear *all* the forfeiture issues in the first place.

■ Fourth, the government argues that Robinson's education, his *pro se* filings throughout the case (including during the forfeiture stage), and his experience with the criminal justice system all show that he knowingly waived his right to a jury. We cannot agree with the government's position. It is true that a defendant's prior experience with a jury trial supports finding a valid waiver. *United States v. DeForest*, 946 F.2d 523, 526 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992). However, we do not believe that this principle is applicable to deciding whether the defendant was aware that he had a right to a jury trial on the issue of which assets are subject to forfeiture.

As the foregoing discussion illustrates, there is no unanimity in the courts regarding whether a defendant has a constitutional right to a jury determination on which assets may be forfeited. How can we say that because a defendant is familiar with the criminal justice system he would know of such a right, constitutional or statutory? Apparently, in this case, the matter of forfeiture was considered along with Robinson's sentencing. In such circumstances, we think it even more unlikely that a defendant would assume that he had a right to have a jury determine which assets are subject to forfeiture. While we may suspect that Robinson did know, there is nothing in the record to show that he did, and we will not presume he knew simply because he had experience with criminal proceedings.

We also find the government's contention that Robinson's education and participation in his defense demonstrates a valid waiver meritless. As we just explained, a defendant

may know of some rights but not this particular right. It is not inconsistent for Robinson to file *pro se* motions addressing the merits of the forfeiture order and not know of the right to a jury determination on the assets issue.

■■■■ Perhaps the strongest argument that can be made for the government is that the record is not silent because Judge Marovich's forfeiture order begins with the following pronouncement: "Robinson waived his right to a jury trial on the issue of forfeiture." This statement is a factual finding by the district court, which is reviewable only for clear error. However, we run into another problem—we cannot evaluate the district judge's finding for clear error because there is no evidence in the record on the issue of personal waiver by Robinson for us to review. We are left with only oblique inferences based on comments made by counsel which do not directly address the issue of waiver.

The burden on the defendant is to prove a negative—that he did not knowingly and intelligently give up his right to have a jury determine which assets are subject to forfeiture. However, when there is no written waiver, no colloquy between the judge and the defendant, no comments by counsel which demonstrate that he obtained a knowing and voluntary waiver from his client, and no evidence that the defendant passively sat by while his counsel waived his right in his presence, the record is effectively silent. Thus, on the record before us, the simple claim by Robinson that he did not waive his right to a jury is sufficient to require a factual rebuttal by the government. Therefore, we remand to the district court for a finding, supported by a developed record, regarding Robinson's waiver of trial by jury on the matter of assets subject to forfeiture. *See Garrett,* 727 F.2d at 1013 (remanding for evidentiary hearing).

If the government can introduce evidence that Robinson was told of his right to a jury

trial by his attorneys and agreed to the bench trial, no jury trial is required. If the government is unable to rebut Robinson's claim then Robinson is entitled, pursuant to Federal Rule Criminal Procedure 31(e), to a jury trial on which assets are subject to forfeiture. In light of the need for a remand, we decline to address Robinson's other arguments attacking the district court's forfeiture determination.

However, one final matter requires discussion. To ensure today's decision is not read to conflict with our recent *en banc* decision in *Cuppett v. Duckworth,* 8 F.3d 1132 (7th Cir. 1993), we briefly explain why *Cuppett* is distinguishable. Cuppett filed a habeas petition objecting to the Indiana state court's use of a 1962 West Virginia conviction in sentencing him as a habitual offender. *Id.* at 1135.[4] Cuppett claimed that he had not validly waived his right to counsel when he pled guilty in 1962. We held that Cuppett's self-serving affidavit stating that he was not told of his right to appointed counsel was insufficient to overcome the presumption of regularity afforded to his West Virginia conviction. *Id.* at 1139. The West Virginia court's 1962 order read that the defendant "did not desire counsel appointed by this Court to represent [him]." *Id.* at 1136. We concluded that, as a result, we did not have a silent record, but an ambiguous one and the defendant had to do more than simply deny the validity of his waiver. *Id.* at 1139.[5]

The instant case is a direct appeal from the judgment of a federal district court. This case is not in appeal from a habeas corpus review of a state court judgment. This status produces two important differences. First, unlike Cuppett, who had an opportunity to present evidence to support his "no waiver" claim at an evidentiary hearing before the district court, Robinson has had no opportunity to present evidence of his "no waiver" claim. On the record before us

---

4. More specifically, Cuppett argued that he was denied effective assistance of counsel because his attorney failed to object or appeal when the state court counted his 1962 conviction for sentencing purposes. *Id.* at 1134–35.

5. We also noted that Cuppett failed to produce any evidence supporting his contention that "appointed" in 1962 meant something different from what it means today because *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), had not yet been decided.

we must presume Robinson only discovered he had a right to a jury once he engaged new counsel to pursue his appeal. As a result, he should be given an opportunity to produce evidence to support his allegations. Second, a damning presumption applied against Cuppett because of the procedural posture of his case, which is not applicable in the context of a direct appeal of a federal judgment. When collaterally attacked, a strong presumption of regularity attaches to a state court's judgment. *Id.* at 1137–39.

Finally, we note one other relevant difference. In *Cuppett,* we emphasized that it seemed entirely proper to hold Cuppett to his burden to prove the infirmity of the 1962 judgment because Cuppett never attacked its validity, either directly or collaterally, until it was thirty-years old and used against him in a sentencing proceeding. *Id.* at 1141. In contrast, Robinson has raised the issue of the validity of his waiver at his first possible opportunity.

The order of forfeiture is VACATED and the matter of criminal forfeiture REMANDED for resolution consistent with this opinion.