Charles E. JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1999–SC–1122–MR.

Supreme Court of Kentucky.

Aug. 21, 2003.

As Modified Sept. 11, 2003.

Charles Jackson, LaGrange, pro se Appellant.

A.B. Chandler, III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

Following a one-day bench trial before the Warren Circuit Court, Appellant was found guilty of First–Degree Assault and sentenced to a twenty (20) year term of imprisonment. Appellant appeals to this Court as a matter-of-right[1] and argues that his conviction must be reversed for a new trial because "the record is silent as to any knowing and intelligent waiver by the Appellant of his right to a trial by jury." After a review of the record and relevant precedent, we agree with Appellant that the record contains no valid waiver of his right to trial by jury. As such, we vacate Appellant's conviction for First–Degree

---

1. KY. CONST. § 110(2)(b).

Assault. But, in lieu of ordering a new trial at this stage of the proceedings, we remand the case for the trial court to conduct an evidentiary hearing to determine whether the bench trial was conducted without Appellant's waiver of his right to a jury trial, in which case Appellant is entitled to a new trial, or whether Appellant actually knowingly, voluntarily, and intelligently waived his right to trial by jury but was erroneously permitted to communicate that waiver through his attorney rather than in writing. Stated otherwise, we remand the case for the trial court to evaluate whether its failure to require Appellant's written waiver was a mere technical error or a prejudicial error that wrongfully deprived Appellant of his right to trial by jury.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 1999, at Appellant's arraignment, the trial court read the grand jury's indictment to Appellant, informed Appellant of his rights—including his right to trial by an impartial jury—and asked Appellant if he understood those rights. Appellant responded affirmatively. Subsequently, on August 26, 1999, Appellant's defense attorney, in Appellant's presence, informed the trial judge that "Mr. Jackson has advised me that he would like to move for a bench trial." Neither the trial court nor defense counsel made any inquiry of Appellant regarding his consent to the waiver, nor did Appellant acknowledge the waiver personally on the record. Nonetheless, after the Commonwealth stated its agreement to waive trial by jury, the trial court stated on the record that "[b]oth sides are waiving their rights, and this matter is set for a bench trial." After the proceedings, Appellant and his counsel began to argue in open court regarding the delay in the trial date and Appellant's re-

ceipt of discovery materials, and Appellant was forcibly removed from the court room.

Following a substitution of counsel, Appellant appeared in court on September 7, 1999, and his new counsel advised the trial court that he "had met with Mr. Jackson and he [Jackson] again has voiced his request for a bench trial." Again, the Commonwealth agreed to proceed without a jury, and again Appellant was not personally questioned regarding the waiver. The trial court then scheduled the case for trial without a jury.

At trial, the evidence showed that, in April 1999:(1) Appellant, an ex-Marine and former detention officer at the Warren County Regional Jail, telephoned his ex-girlfriend, Charlotte Burton ("Burton"), and asked her to come to his house to collect some belongings that she had left there; (2) Burton picked up a friend, Ella Louise Church ("Church") and the two women drove to Appellant's residence where they found Burton's belongings boxed up outside the house; (3) Burton accepted Appellant's invitation to come inside the home to collect her mail; (4) once Burton came inside his home, Appellant grabbed her by the hair and began to beat her with a baton; (5) Church heard Burton's screams and hailed a passing Bowling Green police officer who arrested Appellant as he attempted to pursue Burton as she fled from his home; (6) after receiving his *Miranda* rights, Appellant admitted to assaulting Burton; and (7) Burton suffered serious injuries—a broken rib that punctured her right lung and caused it to collapse and scalp lacerations that had to be sutured with staples—that were characterized by her treating physician as "life-threatening" and still caused her occasional pain as of the date of trial, which was more than five months after the assault itself. Upon this evidence, the trial court found Appellant guilty of First-Degree As-

sault and sentenced him to the maximum prison sentence of twenty (20) years. Appellant's sole claim of error on appeal is that his conviction should be reversed and that he should receive a new trial "because a silent record cannot substitute for the requirements necessary to try the Appellant without a jury."

## III. ANALYSIS

■ Both the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed," [2] and Section 7 of the Kentucky Constitution, which provides that "[t]he ancient mode of trial by jury shall be held sacred, and the right thereof remain involate," [3] guarantee a criminal defendant the right to trial by jury. Although "[i]t is now well settled that an accused, in the exercise of a voluntary and intelligent choice, may waive his right to a jury trial," [4] it was not until 1930 that the United States Supreme Court held definitively that a criminal defendant could waive his federal constitutional right to a trial by jury,[5] and it was not until 1975, in *Short v. Commonwealth*,[6] that our predecessor Court followed suit and held that a Kentucky felony defendant could waive the right to a jury trial.

In *Short*, the Court held that, in order to effectuate a valid waiver, the defendant must knowingly, voluntarily, and intelligently waive the right to an impartial jury, that the Commonwealth must consent, and that the trial court must approve.[7] The Court further explained that:

> In determining whether a waiver of a jury trial is made understandingly, intelligently, competently, and voluntarily, the court must apply the same standards that are required on the acceptance of a guilty plea. The record made as the hearing preceding the acceptance of a waiver by the court must affirmatively set out facts which will permit an independent determination of its validity.[8]

Thus, as we have recently explained, "a trial court may not presume a waiver of the right to a jury trial from a silent record, and ... a court should not presume acquiescence in the loss of a constitutional right." [9]

In 1981, we promulgated RCr 9.26(1), which states "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in writing* with the approval of the court and the consent of the Commonwealth." [10] RCr 9.26(1) essen-

---

2. U.S. CONST. § amend VI. The Fourteenth Amendment makes this portion of the Sixth Amendment applicable to the states. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

3. KY. CONST. § 7.

4. *Marshall v. Commonwealth*, Ky., 60 S.W.3d 513, 522 (2001).

5. *Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930), *abrogated by Williams v. Florida*, 399 U.S. 78, 91, 90 S.Ct. 1893, 1901, 26 L.Ed.2d 446 (1970).

6. Ky., 519 S.W.2d 828 (1975).

7. *Id.* at 832–3.

8. *Id.* at 833.

9. *Marshall v. Commonwealth, supra* note 4 at 522 (citations omitted).

10. RCr 9.26(1) (emphasis added). *See also* AOC Form 440 (Waiver of Jury Trial):

> I, _____, being advised of my Constitutional right to a trial by jury, and with approval of the Court and consent of the Commonwealth pursuant to RCR 9.26(1), hereby and without reservation waive any and all such legal right to a trial by jury and request a court trial.
>
> In further witness of my voluntary and unconditional consent, I further state that

tially codifies the holding in *Short*, but, by adding an additional requirement that a defendant's waiver must be in writing, clarifies that Kentucky "does not *require* a separate colloquy with the defendant with respect to voluntariness,"[11] and instead "presumes voluntariness from a written waiver [without] requir[ing] further investigation by the trial court."[12] As such, RCr 9.26(1) establishes a waiver procedure that contains an explicit "in writing" requirement that is not required under the constitutional parameters described in *Short.*

The record in this case, which contains no written waiver from Appellant, establishes that the trial court committed error when it tried Appellant without a jury without following the waiver procedure set forth in RCr 9.26(1). Our Rules of Criminal Procedure, however, provide that "*no error or defect* ... in *anything* done or omitted by the court or by any of the parties ... is ground for granting a new trial ... unless it appears to the court that the denial of such relief would be inconsis-

tent with substantial justice"[13] and that "[t]he court at every stage of the proceeding must disregard *any error or defect* in the proceeding that does not affect the substantial rights of the parties."[14] Although we have not previously addressed whether RCr 9.26(1)'s "in writing" requirement is mandatory or whether, as the Commonwealth argues, some form of oral waiver might nonetheless be sufficient, we find some guidance in the federal courts' interpretation of Federal Rule of Criminal Procedure (FRCP) 23(a), which is virtually identical to our rule.[15]

■ Under the federal rule, four (4) conditions are necessary for a valid waiver: (1) the defendant must knowingly, voluntarily, and intelligently waive his right to trial by jury; (2) the government's attorney must consent; (3) the trial court must agree; and (4) the waiver must be in writing.[16] Federal courts have held that the "writing requirement is designed to impress the defendant with the gravity of the right relinquished and provide the best evidence of the defendant's voluntary con-

---

my signature affixed below was signed in the presence of this Honorable Court without any threats, promises, duress, or agreements whatsoever, and with full knowledge of my rights as above stated. (Emphasis in original).
AOC Form 440 requires the signatures of the defendant, defense counsel (if any), the prosecuting attorney, and the Judge.

**11.** *Marshall v. Commonwealth, supra* note 4 at 522 (emphasis added).

**12.** *Id. See also Crone v. Commonwealth,* Ky. App., 680 S.W.2d 138, 140 (1984) ("The record here does not indicate in any manner that the appellant waived his right to a jury trial in the manner provided in *Short* [.]").

**13.** RCr 9.24 (emphasis added).

**14.** *Id.* (emphasis added). *See also Johnson v. State,* 72 S.W.3d 346, 348 (Tex.Crim.App. 2002):

We have recognized that "neither the federal nor the state constitution require that a trial by jury be waived in writing." Rather, [in Texas Code of Criminal Procedure Art. 1.13,] the legislature has chosen to specify the manner in which a jury may be waived. Since Johnson alleges merely that there was no written jury waiver, and does not allege that there was no jury waiver at all, he alleges statutory error, not constitutional error. We therefore analyze harm under Appellate Rule 44.2(b). If the error "does not affect substantial rights" then it "must be disregarded." (footnotes omitted).

**15.** FRCP 23(a) states: "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and consent of the government."

**16.** *United States v. Robertson,* 45 F.3d 1423, 1431 (10th Cir.1995), *cert. denied,* 516 U.S. 844, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995).

sent."[17] However, most United States Courts of Appeals have not required strict compliance with FRCP 23(a)'s "in writing" provision[18] and have found the failure to secure the waiver in writing to be non-prejudicial in cases "where the record clearly reflects that the defendant 'personally gave express consent in open court, intelligently and knowingly.'"[19] And, in that regard, the federal appellate courts that have addressed the issue strongly urge the federal trial courts to engage the defendant in a colloquy concerning waiver of a jury trial to inform the defendant that a jury consists of twelve members of the community, that a defendant can take part in selecting his or her jury, that a jury verdict must be unanimous, and that the court alone will decide a defendant's guilt or innocence if the defendant waives his or her right to a jury trial.[20] Thus, under federal law, a written waiver is only one factor to consider in determining if the defendant knowingly, voluntarily, and intelligently waived the right to trial by jury.

We agree with the federal courts' analysis, and thus conclude that a failure to comply with RCr 9.26(1)'s "in writing" requirement will not prejudice a defendant's substantial rights if the trial court engages in a colloquy with the defendant to ensure that the defendant's waiver is constitutionally adequate—*i.e.*, that the defendant is knowingly, voluntarily, and intelligently waiving the right to a jury trial. In the case at bar, however, the record contains neither a written waiver from Appellant nor any oral waiver from Appellant's own mouth. The trial court did not conduct a colloquy with Appellant regarding his right to trial by jury, and, in fact, Appellant was never even asked and never personally acknowledged on the record his consent to the waiver. Instead, the "waiver" in this case consisted of Appellant's attorneys' statements to the trial court—made in open court and in Appellant's presence—that Appellant requested a bench trial. Although Appellant correctly observes that his attorneys' statements did not and cannot constitute a constitutionally valid waiver of his right to trial by jury, our review of the relevant federal authority persuades us that a new trial is not automatically required in such cases.

We can imagine only three (3) possible factual explanations for Appellant's attorneys' requests for a bench trial: (1) counsel requested a bench trial without any prior consultation with Appellant; (2) counsel requested a bench trial without fully consulting with Appellant and explaining his right to a jury trial to him in a manner that would allow him to knowingly, intelligently, and voluntarily waive the right; or (3) counsel fully explained Appellant's right to a jury trial to him, and

**17.** *United States v. Martin,* 704 F.2d 267, 271 (6th Cir.1983). *See also United States v. Robertson, supra* note 16 at 1431; *Marshall v. Commonwealth, supra* note 4 at 522 (quoting *United States v. Martin, supra* ).

**18.** *United States v. Robertson, supra* note 16 at 1431; *United States v. Robinson,* 8 F.3d 418, 422 (7th Cir.1993); *United States v. Garrett,* 727 F.2d 1003, 1012 (11th Cir.1984), *aff'd* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

**19.** *United States v. Saadya,* 750 F.2d 1419, 1420 (9th Cir.1985) (quoting *United States v. Guerrero–Peralta,* 446 F.2d 876, 877 (9th Cir. 1971)); *United States v. Robinson, supra* note 18 at 422.

**20.** *See United States v. Robertson, supra* note 16 at 1432; *United States v. Cochran,* 770 F.2d 850, 852–53 (9th Cir.1985); *United States v. Martin, supra* note 17 at 274–5. We observe that, in Kentucky, which utilizes jury sentencing, the colloquy should also address the defendant's understanding that, in the event of a guilty verdict, the trial judge instead of a jury would fix the punishment.

Appellant knowingly, intelligently, and voluntarily elected to waive that right by requesting a bench trial through counsel. If explanation (1) or (2) accurately describes the state of facts present here, then Appellant's attorneys acted without valid authorization, there was no valid waiver of Appellant's right to trial by jury, and Appellant is entitled to a new trial. However, if explanation (3) fits the bill, a new trial would be a windfall for Appellant because Appellant would have made a constitutionally-adequate waiver of his right to a jury trial that was simply not reflected in the record.

Some of the United States Courts of Appeals have closely examined the question of what relief is appropriate in cases where the record contains an attorney's representation that the defendant wishes to waive his right to trial by jury, but no valid written or oral waiver from the defendant personally. In *United States v. Garrett*,[21] for example, the appellant objected "that his Sixth Amendment right to a trial by jury ... was not properly waived inasmuch as there was only an oral waiver by counsel, not a written waiver by Garrett himself."[22] The Eleventh Circuit recognized the possibility that the appellant had invited error[23] by knowingly failing to perfect his waiver and thus, instead of reversing for a new trial, remanded the case for further fact-finding as to whether the appellant actually waived his right to trial by jury:

> Next, we must determine whether Garrett has made out a valid claim of improper waiver. We begin with the observation that [the] purpose of Rule

23(a) is to ensure that a criminal defendant is aware of his jury right before waiving it and that any waiver is personal and unequivocal.... Thus, reversal is warranted where there is no written waiver signed by the defendant in the record *and the defendant asserts either that he was unaware of his jury right or that he did not consent to its waiver.*

This is not to say that the court will invariably grant relief for purely technical violations of the rule, as where a defendant knowingly acquiesced in a waiver which was never reduced to writing. If the defendant admits, or the government plainly demonstrates, that at the time of the waiver the defendant was not ignorant of his jury right and consented to the waiver, reversal would not be in order, for the defendant cannot complain on appeal of an alleged error invited or induced by himself.

It is unclear from Garrett's appellate briefs whether he presents us with a purely technical claim. Moreover, the record is silent as to whether Garrett was in fact cognizant of his jury right and agreed to counsel's oral waiver, hence inviting error by remaining silent. We therefore remand to the district court for an evidentiary hearing on this issue. Unless the government succeeds in proving Garrett's knowledge and consent, express or implied, Garrett must be afforded a new trial, before a jury.... [O]nly if the augmented record firmly establishes Garrett's knowledge and consent will the [judgment]

---

**21.** *Supra* note 18.

**22.** *Id.* at 1012. *See also Id.* at 1013 n. 7 ("In his main brief, Garrett does not assert that he was denied the right to a jury trial; rather he urges reversal on the ground that the record contains 'neither a written waiver by appellant nor any indication that he was ever made

aware of his rights to a jury trial [...] let alone waived such right.' ").

**23.** *See United States v. Page,* 661 F.2d 1080, 1082–3 (5th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 136 (1982).

stand.[24]

And, in *United States v. Robinson*,[25] another case where the "waiver" of jury proceedings came from the appellant's counsel rather than the appellant personally, the Seventh Circuit disagreed with the appellant's contention that automatic reversal was required when neither a written waiver nor a colloquy appeared in the record.[26] The Court acknowledged that it could not characterize the error as harmless on the basis of the silent record before it,[27] but, instead of ordering a new trial, vacated the conviction and remanded the case for an evidentiary hearing on the question of whether the appellant's attorney's "waiver" was authorized:

> [W]hen there is no written waiver, no colloquy between the judge and the defendant, [and] no comments by counsel which demonstrate that he obtained a knowing and voluntary waiver from his client ... the record is effectively silent. Thus, on the record before us, the simple claim by Robinson that he did not waive his right to a jury is sufficient to require a factual rebuttal by the government. Therefore, we remand to the district court for a finding, supported by a developed record, regarding Robinson's waiver of trial by jury....
>
> If the government can introduce evidence that Robinson was told of his right to a jury trial by his attorneys and agreed to the bench trial, no jury trial is required. If the government is unable to rebut Robinson's claim then Robinson is entitled ... to a jury trial.... [28]

Given their factual similarities to the case at bar, we find the relief found appropriate in *Garrett* and *Robinson* to be a persuasive and viable alternative in this case. Appellant acknowledged at arraignment that he understood his right to trial by jury and then, on two (2) separate occasions, stood beside his attorneys without comment as they announced to the trial court that Appellant requested a bench trial. And, even after the bench trial, Appellant sent the trial judge a three (3) page letter in which he offered additional information regarding his trial testimony and requested the return of some belongings seized from his home, but, significantly, expressed no surprise over the fact that the trial had been conducted without a jury present. It was only on appeal—and thus after the trial judge had sentenced him to the maximum sentence of twenty (20) years—that Appellant first contested the propriety of the bench trial conducted in his case. Even on appeal, however, Appellant does not assert that his attorneys acted without his informed consent when they requested a bench trial on his behalf. Instead he argues simply that "the record is silent as to any knowing and intelligent waiver by the Appellant of his right to a trial by jury." Although we

---

24. *United States v. Garrett, supra* note 18 at 1012–13 (emphasis added and footnotes and citations omitted).

25. *Supra* note 18.

26. *Id.* at 422.

27. *Id.* ("However, we cannot say that the district court's failure to follow [*United States v.*] *Scott*[, 583 F.2d 362, 364 (7th Cir.1978) ] was harmless because there is nothing else in the record before us which satisfactorily demonstrates that Robinson personally gave a know-

ing and voluntary waiver of his right to have a jury[.]").

28. *Id.* at 425 (citation omitted). *Cf. United States v. Agee*, 83 F.3d 882, 887–8 (7th Cir. 1996) (remanding in a case where the validity of the appellant's waiver of his right to appeal was contested "since it may still be possible to glean further and more reliable information from either the defendant or defense counsel about the circumstances surrounding the agreement.").

recognize that this record would not be silent if the trial court had merely complied with RCr 9.26(1) and required Appellant to execute a written waiver, we find this to be an "extraordinary case"[29] in which the factual backdrop is sufficiently suggestive of invited error that a remand is a more appropriate remedy than a new trial.

Accordingly, we vacate Appellant's conviction and remand this case to the trial court for an evidentiary hearing at which the Commonwealth may attempt to prove that Appellant's attorneys' bench trial requests were the result of proper consultation with Appellant and a knowing, voluntary, and intelligent waiver by Appellant of his right to trial by jury. The Commonwealth shall have the burden of proof on this issue, and if the Commonwealth does not satisfy its burden, Appellant shall be entitled to a new trial. If, however, the trial court finds that Appellant made a constitutionally-valid waiver of his right to trial by jury that he communicated to the court through his attorneys' motions, the trial court should reinstate the judgment of conviction, and Appellant may seek appellate review of the trial court's factual determination.

## IV. CONCLUSION

For the above reasons, we vacate Appellant's conviction for First–Degree Assault and remand the case to the Warren Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J.; GRAVES and JOHNSTONE, JJ., concur.

WINTERSHEIMER, J., concurs in result only.

COOPER, J., dissents by separate opinion in which STUMBO, J., joins.

COOPER, Justice, dissenting.

On April 17, 2001, I circulated a draft opinion that would have reversed this case for a jury trial because of the failure to follow the procedure mandated by RCr 9.26(1): "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Commonwealth." Alas, there were not four members of this Court willing to enforce our own rule. Now, twenty-eight months later, the majority of this Court has decided to remand this case to the trial court for a "retrospective voluntariness hearing," compare Thompson v. Commonwealth, Ky., 56 S.W.3d 406 (2001) (retrospective competency hearing), to determine whether Appellant "knowingly, voluntarily, and intelligently" made an off-the record, unwritten waiver of his right to trial by jury.

Of course, the burden of proof will be on the Commonwealth; and unless the Commonwealth can find, e.g., a jailhouse informant, the only persons who could testify to the critical fact would be Appellant and his attorneys. No doubt, Appellant, whose conviction is not yet final, will assert his Fifth Amendment right not to testify against himself, U.S. Const., amend. V; and, no doubt, he will assert his lawyer-client privilege to prevent his attorneys from testifying against him. KRE 503. (This is not a malpractice action or an RCr 11.42–type proceeding in which Appellant is claiming ineffective assistance of counsel so as to constitute an automatic waiver. Appellant is claiming that he did not make a written waiver of his right to trial by jury as required by a rule adopted by this Court.)

To preclude any further delay in the resolution of this matter, I simply adopt

**29.** *United States v. Garrett, supra* note 18 at 1013.

the legal analysis of my original draft opinion (portions of which have been adopted by the majority opinion) as my dissent, *viz:*

Section 7 of the Kentucky Constitution guarantees a criminal defendant the right to trial by jury. "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, ..." The Sixth Amendment of the United States Constitution also preserves this right: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...." [1] The history of trial by an impartial jury stretches back to the Magna Carta and the early history of England, where juries developed as a means to protect individuals against the arbitrary and oppressive power of the crown. *Duncan v. Louisiana, supra* note 1, at 151, 88 S.Ct. at 1448; *but see Williams v. Florida,* 399 U.S. 78, 91, 90 S.Ct. 1893, 1901, 26 L.Ed.2d 446 (1970) (suggesting that juries do not derive from the Magna Carta). Thus, Blackstone termed the right to trial by jury "the glory of the English law." 3 William Blackstone, *Commentaries on the Laws of England* 379 (photo. reprint 1992) (1768). As English colonists settled America, they brought this heralded right with them:

Those who emigrated to this country from England brought with them this great privilege 'as their birthright and inheritance, as a part of that admirable common law which had fenced around and interposed barriers on every side against the approaches of arbitrary power.'

*Thompson v. Utah,* 170 U.S. 343, 349–50, 18 S.Ct. 620, 622, 42 L.Ed. 1061 (1898)

(quoting 2 J. Story, *Commentaries on the Constitution of the United States* § 1779), *overruled on other grounds, Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Thus, the right to a jury trial is imbedded in the history of our nation and our Commonwealth and is fundamental to our system of justice. As the United States Supreme Court has said:

The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.

*Duncan, supra* note 1, at 156, 88 S.Ct. at 1451.

So important was this right that not until 1930 was it definitively held that a criminal defendant could waive the right to a trial by jury. *Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930), *abrogated by, Williams v. Florida, supra; see also Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942). And not until 1975 did Kentucky follow suit and hold that a felony defendant could waive the right to a jury trial. *Short v. Commonwealth,* Ky., 519 S.W.2d 828 (1975). In that case, our predecessor Court held that, in order to effectuate a valid waiver, the defendant must voluntarily, intelligently, and knowingly waive the right to an impartial jury, that the Commonwealth must consent, and that the court must approve. *Id.* at 832–33. *See also Patton, supra,* at 312, 50 S.Ct. at 263;

---

**1.** The Fourteenth Amendment makes this portion of the Sixth Amendment applicable to the states. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

*Adams, supra,* at 275, 63 S.Ct. at 240. In determining whether a valid waiver has occurred, the same standards apply as are required on the acceptance of a guilty plea; and the record must disclose affirmative "facts which will permit an independent determination of [the waiver's] validity." *Short, supra,* at 833, citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In 1981, we promulgated RCr 9.26(1), which states "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in writing* with the approval of the court and the consent of the Commonwealth." (Emphasis added.) This essentially codifies the holding in *Short* but adds the important proviso that a defendant must waive a jury trial "in writing." We have not previously addressed whether the "in writing" requirement of RCr 9.26(1) is mandatory or whether, as the Commonwealth posits, some form of oral waiver might suffice.

Federal Rule of Criminal Procedure (FRCP) 23(a) is identical to RCr 9.26(1).[2] Under the federal rule, four conditions must be met for a valid waiver. One, the defendant must knowingly, voluntarily, and intelligently waive that right. Two, the government's attorney must consent. Three, the trial court must agree. Four, the waiver must be in writing. *United States v. Robertson,* 45 F.3d 1423, 1431 (10th Cir.1995), *cert. denied,* 516 U.S. 844 [116 S.Ct. 133, 133 L.Ed.2d 81] (1995). Federal courts have held that the "writing requirement is designed to impress the defendant with the gravity of the right relinquished and

provide the best evidence of the defendant's voluntary consent." *United States v. Martin,* 704 F.2d 267, 271 (6th Cir.1983). *See also Robertson, supra,* at 1431; *United States v. Guerrero–Peralta,* 446 F.2d 876, 877 (9th Cir.1971).[3] However, most United States Courts of Appeals do not require strict compliance with the "in writing" provision of FRCP 23(a). *Robertson, supra,* at 1431; *United States v. Robinson,* 8 F.3d 418, 422 (7th Cir.1993); *United States v. Garrett,* 727 F.2d 1003, 1012 (11th Cir.1984), *aff'd,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). But "[t]he only exception [to the "in writing" requirement] is where the record clearly reflects that the defendant 'personally gave express consent in open court, intelligently and knowingly.'" *Saadya, supra* note 3, at 1420 (quoting *Guerrero–Peralta, supra,* at 877); *Robinson, supra,* at 422. This would seem to comport with the pre-RCr 9.26(1) holding in *Short v. Commonwealth, supra,* at 833, that an inquiry similar to that required for determining the validity of a guilty plea would suffice. *See Boykin v. Alabama, supra.*

In that regard, all of the United States Courts of Appeals that have addressed the issue strongly urge that federal trial courts engage the defendant in a colloquy concerning waiver of a jury trial to inform the defendant that a jury consists of twelve members of the community, that a defendant can take part in selecting his/her jury, that a jury verdict must be unanimous, and that the court alone will decide a defendant's guilt or innocence if a jury is waived.

---

**2.** FRCP 23(a) states: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and consent of the government."

**3.** *Guerrero–Peralta* concerned waiver of the requirement of a twelve-person jury. However, other Ninth Circuit cases cite it as applicable to waiver from jury trial to bench trial. *E.g., United States v. Saadya,* 750 F.2d 1419, 1420 (9th Cir.1985).

*See Robertson, supra,* at 1432; *United States v. Cochran,* 770 F.2d 850, 852–53 (9th Cir.1985); *Martin, supra,* at 274–75. This colloquy ensures that the defendant's waiver is voluntary, knowing, and intelligent; that challenges to the waiver are avoided on appeal; and that the defendant truly understands the enormity of the right forfeited. *Cochran, supra,* at 852. Thus, under federal law, a written waiver is only one factor to consider in determining if the defendant knowingly, voluntarily, and intelligently waived the right to trial by jury. In addition and of equal importance is whether the defendant personally waived the right in open court and if the trial judge conducted a colloquy with the defendant to ensure a knowing, intelligent, and voluntary waiver.

Here, there was no written waiver "to impress the defendant with the gravity of the right relinquished and provide the best evidence of the defendant's voluntary consent." *Martin, supra,* at 271. Nor did the waiver come from Appellant's own mouth; instead, his counsel informed the trial judge of the waiver as Appellant stood silently by. Thus, even if we were to apply the less stringent federal standard permitting an oral rather than a written waiver, the facts of this case would still require reversal; for Appellant was never asked and never personally acknowledged on the record his consent to the waiver or that he fully understood the gravity of that decision. Waiver of the right to trial by jury will not be inferred from silence or mere acquiescence. We are not persuaded otherwise by the decision of the United States Court of Appeals for the Fifth Circuit in *United States v. Page,* 661 F.2d 1080 (5th Cir.1981), *cert. denied,* 455 U.S. 1018 [102 S.Ct. 1713, 72 L.Ed.2d 136] (1982). There, the defendant's waiver was held valid, despite the absence of a written waiver and despite the fact that, as here, counsel informed the trial judge of the waiver and the defendant merely failed to object. However, the court made much of Page's education and occupation, a Ph.D. in parasitology and a former university professor of biology; the actual waiver by Page's counsel: "'[H]e and his client, Dr. Page, had given considerable thought over ... the weekend to the question of whether to try this case to the jury ... [and] they both decided that a bench trial was preferable ...;'" and the fact that the venire were present in the courtroom when the waiver was made (thus emphasizing the defendant's right to a jury trial). *Id.* at 1080–82. Even if we were inclined to follow *Page,* none of those factors are present here. The record does not reflect that Appellant is a highly educated individual, or that he and his counsel discussed the pros and cons of a bench trial as opposed to a trial by jury, or that the decision to waive jury trial was an informed choice agreed upon by both Appellant and his attorney. Nor, unlike *Page,* were the venire present in the courtroom and immediately ready to provide a trial by jury when the waiver occurred. Furthermore, not all United States Courts of Appeals would agree with *Page. See Guerrero–Peralta, supra,* at 877, stating "[a]n assertion by defense counsel that the defendant has consented [to a waiver] is less reliable evidence, even when coupled with the inference of acquiescence drawn from defendant's failure to protest. Such an assertion is insufficient to show that the defendant's consent ... was given with the requisite degree of understanding."

The United States Supreme Court has stated:

Trial by jury is the normal and ... the preferable mode of disposing of issues of fact in criminal cases .... Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial ... and with a caution increasing in degree as the offenses dealt with increase in gravity.

*Patton, supra,* at 312–13, 50 S.Ct. at 263.

This was a one-day trial. This Court has spent three years searching for an excuse to avoid enforcement of our own rule of criminal procedure so as to affirm this conviction. Unable to do so, the majority now remands the case to the trial judge with directions to conduct his own search. I believe we should either enforce RCr 9.26(1) or rescind it. I also believe an appellate court should decide cases on the basis of the record before it, not remand cases to the trial court with the option of either creating a better record that will justify an affirmance or assuming the awkward posture of having to reverse his/her own judgment. It may be just a coincidence, but I do not recall this Court ever remanding a case so that the record could be supplemented on behalf of a criminal defendant. Usually we refer to the defendant's obligation to preserve the error, *e.g., Commonwealth v. Ferrell,* Ky., 17 S.W.3d 520 (2000), or to ensure that the record is properly forwarded for review, *e.g., Fanelli v. Commonwealth,* Ky., 423 S.W.2d 255 (1968).

Accordingly, I dissent.

STUMBO, J., joins this dissenting opinion.